IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

CODY LIVERMAN,                          )
                                        )
            Plaintiff,                  )
                                        )
vs.                                     )          Case No. CIV-15-00029-JHP
                                        )
SHERIFF KEN GOLDEN,                     )
                                        )
            Defendant.                  )

_____

**DEFENDANT SHERIFF KEN GOLDEN'S
MOTION AND BRIEF FOR SUMMARY JUDGMENT**
_____

Ambre C. Gooch, OBA No. 16586
Jordan L. Miller, OBA No. 30892
COLLINS, ZORN  & WAGNER, P.C.
429 N.E. 50th Street, 2nd Floor
Oklahoma City, OK 73105-1815
Telephone:  (405) 524-2070
Facsimile:  (405) 524-2078
Email for service: gooch@czwglaw.com

ATTORNEYS FOR DEFENDANT SHERIFF
KEN GOLDEN

October 29, 2015

**TABLE OF CONTENTS**

**PAGE**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii - iii

LIST OF ATTACHMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I.      STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     LcvR 56.1(b) STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    ARGUMENT AND AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B.      Plaintiff's Allegations Do Not Rise to the Level of
                Actionable Sexual Harassment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        C.      Defendant is Entitled to the Faragher/Ellerth Defense . . . . . . . . . . . . . . . . . . . 12

        D.      Plaintiff Cannot Establish a Prima Facie Case of Retaliation . . . . . . . . . . . . . 14

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITY

**CASES**                                                                    **PAGE**

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . 7, 13

*Adusumilli v. City of Chicago*, 164 F.3d 353 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 10

*Anderson v. Acad. Sch. Dist. 20,* 122 Fed. Appx. 912 (10th Cir.2004) . . . . . . . . . . . . . . . . . . 15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257,
141 L.Ed.2d 633 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Campbell v. U.S. Postal Serv.*, 151 F. Supp. 2d 1284 (D. Kan. 2001) . . . . . . . . . . . . . . . . . . 11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Conaway v. Smith*, 853 F.2d 789 (10th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cone v. Longmont United Hosp. Ass'n.*, 14 F.3d 526 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . 7

*Ellison v. Brady*, 924 F.2d 872 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Faragher v. City of Boca Raton,* 524 U.S. 775 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Harsco Corp. V. Renner*, 475 F.3d 1179 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hilt v. Dyson v. City Of Chicago*, 282 F.3d 456 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . 11

*Hinds v. Sprint/United Mgmt. Co.,* 523 F.3d 1187 (10th Cir.2008) . . . . . . . . . . . . . . . . . . . . 15

*Kramer v. Wasatch Cnty. Sheriff's Office*,
743 F.3d 726 (10th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*McCrackin v. LabOne, Inc.*, 903 F. Supp. 1430 (D. Kan. 1995) . . . . . . . . . . . . . . . . . . . . . . 11

*Morris v. City of Colo. Springs,* 666 F.3d 654 (10th Cir.2012) . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Penry v. Fed. Home Loan Bank of Topeka,* 155 F.3d 1257 (10th Cir.1998) . . . . . . . . . . . . 9 -12

*Perez v. Norwegian Am. Hosp.,* 243 F. Supp. 2d 792 (N.D. Ill. 2003)
aff'd sub nom. *Perez v. Norwegian Am. Hosp., Inc.,*
 93 F. App'x 910 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Petersen v. Utah Dep't of Corr.,* 301 F.3d 1182 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . 16, 18

*Robinson v. Cavalry Portfolio Services, LLC,*
365 Fed.Appx. 104 (10th Cir.2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Roemer v. Pub. Serv. Co. of Colo.,* 911 F. Supp. 464 (D. Colo. 1996) . . . . . . . . . . . . . . . . . . . . 7

*Saxton v. American Telephone and Telegraph Co.,*
10 F.3d 526 (7th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Schmidt v. Canadian Nat. Ry. Corp.,* 232 F. App'x 571 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . 11

*Smith v. Nw. Fin. Acceptance, Inc.,* 129 F.3d 1408 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . 9, 12

*Stover v. Martinez,* 382 F.3d 1064 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Tabor v. Hilti, Inc.,* 703 F.3d 1206 (10th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Turnbull v. Topeka State Hosp.,* 255 F.3d 1238 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Univ. of Texas v. Nassar,* 133 S. Ct. 2517 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Weiss v. Coca–Cola Bottling Co. of Chicago,*
990 F.2d 333 (7th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**STATUTES**

42 U.S.C. § 2000e-3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

**RULES**

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

LcvR 56.1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## <u>ATTACHMENTS TO MOTION FOR SUMMARY JUDGMENT</u>

Exhibit 1     Excerpts of the deposition of Cody Liverman taken on September 3, 2015

Exhibit 2     Employee Status form dated July 23, 2013 re Liverman

Exhibit 3     Notice to Jail Employees signed by Liverman

Exhibit 4     Anti-Discrimination Policy signed by Liverman

Exhibit 5     Excerpts of the deposition of Jamie Newberry taken on October 8, 2015

Exhibit 6     Anti-Discrimination Policy signed by Miller

Exhibit 7     Facebook messages between Liverman and Ashley Love

Exhibit 8     Disciplinary Action Notice Date re termination of Liverman dated March 21, 2014

Exhibit 9     Excerpts of the deposition of Sheriff Golden taken on October 7, 2015

Exhibit 10    Employee Status form dated March 24, 2014 re Liverman

Exhibit 11    *Schmidt v. Canadian Nat. Ry. Corp*., 232 F. App'x 571 (7th Cir. 2007)

Exhibit 12    *Anderson v. Acad. Sch. Dist. 20,* 122 Fed. Appx. 912 (10th Cir.2004)

Exhibit 13    *Robinson v. Cavalry Portfolio Services, LLC,* 365 Fed.Appx. 104 (10th Cir.2010)

Exhibit 14    Excerpts of the deposition of Bruce Jackson taken on September 4, 2015

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

CODY LIVERMAN,                          )
                                        )
                Plaintiff,              )
                                        )
vs.                                     )        Case No. CIV-15-00029-JHP
                                        )
SHERIFF KEN GOLDEN,                     )
                                        )
                Defendant.              )

**DEFENDANT SHERIFF KEN GOLDEN'S**
**MOTION AND BRIEF FOR SUMMARY JUDGMENT**

Defendant Sheriff Ken Golden requests that this Court grant summary judgment in his favor as to all claims alleged against him pursuant to Fed. R. Civ. P. 56, for the reasons set forth in the following Brief:

**I.      STATEMENT OF THE CASE.**

This is an employment case filed under Title VII against Sheriff Golden in his Official Capacity.  Plaintiff alleges that during his employment as a jailer at the Bryan County Jail, he was sexually harassed by a female co-worker, that he complained of such harassment and was retaliated against for such complaint by being terminated.

Defendant Golden denies Plaintiff's allegations.  Defendant Golden contends that the alleged behavior about which Plaintiff complains is not actionable sexual harassment.  Further, Defendant Golden contends that Plaintiff was terminated for legitimate, non-retaliatory, non-discriminatory reason: he violated Jail employee rules by fraternizing and socializing with a female who had been an inmate in the Jail.

**II.     LCvR 56.1(b) STATEMENT**.

Pursuant to LCvR 56.1(b), Defendant Golden asserts that there is no genuine dispute as to

the following material facts:

1.　　Plaintiff Cody Liverman  began working as a jailer at the Bryan County Jail on July 23, 2013  (See Ex. 1, Depo. of Liverman, 12:15-13:8, 39:9-39:11, 49:5-49:12, 52:9-52:11; Ex. 2, Employee Status Form dated July 23, 2013).

2.　　As part of the hiring process, Liverman signed the Rules and Regulations for Jail employees, which included a notice that grounds for termination included "Fraternization, or allowing the fraternization (conducting social relations with people who are actually unrelated and/or of a different class especially with whom one works as though they were siblings, family members, personal friends, or lovers) between inmates, jailers, relatives, or friends with any current inmate of the Bryan County Jail." (See Ex. 1, Depo of Liverman, 58:15-61:22; Ex. 3, Notice to Jail Employees).

3.　　On July 23, 2013, Liverman signed the Anti-Discrimination Policy at the Bryan County Jail, which required employees to file a complaint by contacting their immediate supervisor in the chain of command, the Sheriff, or the County Commissioners, and also required employees to treat their coworkers with respect and banned any discriminatory practices based on sex.  (See Ex. 1, Depo. of Liverman, 62:12-63:13; Ex. 4, Anti-Discrimination Policy).

4.　　Originally, Liverman's immediate supervisor was Sergeant Hall, as there was no Corporal at the time.  (See Ex. 1, Depo. of Liverman, 52:17-54:14, 73:8-74:12).

5.　　 Liverman never complained of any harassment to Sergeant Hall.  (See Ex. 1, Depo. of Liverman, 64:24-65:1).

6.　　Lisa Miller ("Miller") was hired to work  at the Bryan County Jail in November of 2013 as a Jailer, the same position as Liverman.  (See Ex. 1, Depo. of Liverman, 65:11-65:14, 67:6-

2

67:9).

7.      On November 6, 2013, Miller also signed the Anti-Discrimination Policy, which required employees to treat their coworkers with respect and also banned any discriminatory practices based on sex.  (See Ex. 5, Depo. of Newberry, 50:14-51:4; Ex. 6, Anti-Discrimination Policy signed by Miller).

8.      Jamie Newberry became the new Jail Administrator the last day of January 2014 (See Ex. 5, Depo. of Newberry, 10:12-19; 19:10-13).

9.      Liverman claims that there was one occasion after Newberry became Jail Administrator when he was working the control room, and Miller rubbed his shoulders for five or six seconds. Liverman did not say anything to Miller at this time, but rather just "scooted away." (See Ex. 1, Depo. of Liverman, 65:21-67:5, 84:23-85:1, 90:9-90:13).

10.     Liverman claims that a week or two later, on one occasion Miller walked by him in the book-in area, asked him how he was doing, and rubbed or patted his stomach outside of his clothes for two seconds.   Liverman's only response was "Good, how are you?" (See Ex. 1, Depo. of Liverman, 69:24-72:20, 90:14-16).

11.     Liverman claims that Miller's patting his stomach this way only offended him a "little bit." (See Ex. 1, Depo. of Liverman, 72:15-16).

13.     Liverman admits that his Complaint, which alleges that Miller had touched his shoulders and neck multiple times, is not correct.  (See Ex. 1, Depo. of Liverman, 91:24-92:8).

14.     Liverman never made any complaints to Corporal Williamson regarding anyone other than Miller.  (See Ex. 1, Depo. of Liverman, 75:14-75:18).

15.     Liverman claims that approximately one month after the incident described in

3

Undisputed Fact No. 10, when he was asking for a day off to go to a Oklahoma City Thunder game with his girlfriend, Miller said "You don't need to take her, you can take me."  (See Ex. 1, Depo. of Liverman, 77:16-78:15, 79:12-80:7, 81:12-81:20).

16.     Liverman did not complain to anyone about this incident in Undisputed Fact No. 15 above.  (See Ex. 1, Depo. of Liverman, 82:17-82:20).

17.     The only complaints Liverman has about Miller's conduct toward him are regarding the three incidents described above in Undisputed Fact Nos. 9, 10, and 15 (rubbing his shoulders, patting his stomach, asking him about the Thunder game).  (See Ex. 1, Depo. of Liverman, 83:17-84:7).

18.     Miller was not Liverman's supervisor at the time of any of three incidents.  (See Ex. 1, Depo. of Liverman, 84;8-84:22).

19.     Prior to terminating Liverman, no one (including Liverman) had advised Newberry that Liverman had complained of sexual harassment by Miller. ( Ex.  5, Depo. of Newberry, 18:9-25).

20.     Newberry never observed Miller touch Liverman, or behave in an appropriate manner, with Liverman.  (See Ex. 5, Depo. of Newberry, 19:1-19:9).

21.     Ashley Shores was booked into the Bryan County Jail on December 4, 2013, where she was an inmate until her release on December 30, 2013. (See Ex. 1, Depo. of Liverman, 93:7-94:1.

22.     Between December 31, 2013 and January 12, 2014, Liverman and Shores repeatedly sent flirty Facebook messages to each other, such as:  Liverman told  Shores that it was "cool" that she was drinking; Liverman asked Shores "why do u wanna text me so bad lol?;" Liverman asked

4

Shores "So ur not into white guys;" and Liverman asked Shores to send him "a pic," among other text messages. (See Ex. 1, Depo. of Liverman, 97:1-101:11; Ex. 7, Facebook messages).

23.     Liverman agrees that a supervisor could think that his Facebook messages with Shores were inappropriate.  (See Ex. 1, Depo. of Liverman, 112:23-113:7).

24.     Shores was booked in to the Bryan County Jail again on February 21, 2014, and was again an inmate until her release on June 4, 2014.  At this time, her husband was also an inmate of the Bryan County Jail. (See Ex. 1, Depo. of Liverman, 93:7-94:1, 103:8-103:18).

25.     Liverman had interactions and conversations with Shores once she returned to the Bryan County Jail, and probably spoke to her over the intercom.  (See Ex. 1, Depo. of Liverman, 106:5-106:21).

26.     Shores's husband began making threats towards Liverman.  (See Ex. 5, Depo. of Newberry, 13:22-13:23).

27.     On March 21, 2014, Shores complained to Newberry about Liverman and his actions toward her.   Shores reported that Liverman had requested Shores to be his Facebook friend, that they often spoke on the phone after her first release from the Bryan County Jail, that after her second arrest Liverman would rev his engine 5 times to say "good night" to her, and that Shores' husband had told Liverman he would not have a problem "taking him."  (See Ex. 5, Depo. of Newberry, 14:23-16:2; Ex. 8, Disciplinary Action Notice re Liverman).

28.     At this time, Shores came into Newberry's office and they pulled up the Facebook messages (referenced in Undisputed Facts No. 22 and 23 above) on the computer.  (See Ex. 5, Depo. of Newberry, 13:19-14:2, 16:12-16:19; Ex. 7, Facebook messages).

29.     Newberry spoke with personnel at the Sheriff's Office about the issues described in

Undisputed Facts No. 22-28 above; Sheriff's Office personnel approved termination as the appropriate discipline for Liverman. (Ex. 5, Depo. of Newberry, 142:14-142:25).

30.     The concerns raised by Shores about Liverman and her husband's threats toward Liverman implicated safety issues for both Liverman and the inmates, which was worthy of termination.  (See Ex. 9, Depo. of Golden, 7:12-8:22).

31.     Later that same day, Newberry called Liverman into her office, and asked Liverman if he had ever messaged or talked to Shores on Facebook.  Liverman admitted to the Facebook communications. (See Ex. 1, Depo. of Liverman,  94:2-94:23, 95:22-96:19, Ex. 5, Depo. of Newberry, 18:24-18:25, 129:7-129:18).

32.     Newberry terminated Liverman for fraternizing with Shores as discussed above, which was a violation of Jail policy.  (See Ex. 5, Depo. of Newberry, 17:23-18:6; 18:24-25; Ex.10, Employee Status/Change of Pay Form; Exhibit 3, Notice to Jail Employees signed by Liverman).

33.     Liverman agrees that he was terminated because jail administration believed that he was flirting with inmate Shores.  (See Ex. 1, Depo. of Liverman, 44:11-44:21).

34.     Miller behaved the same way toward men as toward women.  Miller is a person "who had no boundaries."  (See Ex. 14, Depo. of Jackson, 180:10-181:8).

## III.     ARGUMENT AND AUTHORITY.

### A.     Standard of Review.

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Celotex Corp. v. Catrett*,

477 U.S. 317 (1986).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court held that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." The Court further held that "if the evidence is merely colorable, or not significantly probative, summary judgment may be granted." *Id.* In addition, the *Anderson* Court stated that "the mere existence of a scintilla of evidence in support of a plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Id.* A movant's summary judgment burden may properly be met by reference to the lack of evidence in support of plaintiff's position. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 325).

Furthermore, as described by the court in *Cone v. Longmont United Hosp. Ass'n.*, 14 F.3d 526 (10th Cir. 1994), "Even though all doubts must be resolved in (the nonmovant's) favor, allegations alone will not defeat summary judgment." *Cone* at 530 (citing *Celotex*, 477 U.S. at 324). *See also Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991); *Roemer v. Pub. Serv. Co. of Colo.*, 911 F. Supp. 464, 469 (D. Colo. 1996). Moreover, "(i)n response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

**B.    Plaintiff's Allegations Do Not Rise to the Level of Actionable Sexual Harassment**.

Plaintiff alleges that he was subjected to sexual harassment by Lisa Miller in violation of Title VII. "Title VII does not establish a general civility code for the workplace. Accordingly, the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American

workplaces is not the stuff of a Title VII hostile work environment claim." *Morris v. City of Colo. Springs,* 666 F.3d 654, 663–64 (10th Cir.2012).    To be protected by Title VII, the behavior must have been "so objectively offensive to alter the 'conditions' of the victim's employment*." Harsco Corp. V. Renner*, 475 F.3d 1179, 1187 (10th Cir. 2007)(internal citations omitted).  Liverman cannot show that the alleged harassment of him was "so objectively offensive to alter the 'conditions' of the victim's employment*."*

Liverman alleges essentially three separate acts constitute sexual harassment of him by Miller. Newberry became Jail Administrator on January 31, 2014.  (See Undisputed Fact No. 8). Liverman claims that on one occasion after Newberry became Jail Administrator, he was working in the control room and Miller rubbed his shoulders for five or six seconds. Liverman did not say anything to Miller at this time, but rather just "scooted away."  (See Undisputed Fact No. 9). Liverman claims that a week or two later, Miller walked by him in the book-in area, asked him how he was doing, and rubbed or patted his stomach outside of his clothes for two seconds.  Liverman's only response was "Good, how are you?" (See Undisputed Fact No. 10).  Liverman claims that Miller's patting his stomach this way only offended him a "little bit."  (See Undisputed Fact No. 11)[1]. Finally, Liverman claims that approximately one month after the "stomach pat" incident (described in Undisputed Fact No. 10), when he was asking for a day off to go to a Oklahoma City Thunder game with his girlfriend, Miller said "You don't need to take her, you can take me."  (See Undisputed Fact No. 15). Notably, Miller behaved the same way toward men as toward women; she is a person "who had no boundaries." (See Undisputed Fact No. 34).

---

[1]Liverman admits that his Complaint, which alleges that Miller had touched his shoulders and neck multiple times, is not correct.  (See Undisputed Fact No. 13).

These three alleged actions (i.e., rubbing his shoulders for a few seconds, patting his stomach for a couple of seconds, and asking him about the Thunder game) are the *only* complaints Liverman has which he claims are sexual harassment, during his nearly eight months of employment.   This is simply not enough to rise to the level of actionable, sexual harassment.   This alleged behavior is not "so objectively offensive to alter the 'conditions' of the victim's employment.*"*

 To survive summary judgment on a claim of hostile work environment sexual harassment, plaintiff must show that "a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Penry v. Fed. Home Loan Bank of Topeka,* 155 F.3d 1257, 1261 (10th Cir.1998) (quotation omitted).   In addition, plaintiff must show that the harassing conduct was "both objectively and subjectively abusive." *Turnbull v. Topeka State Hosp.,* 255 F.3d 1238, 1243 (10th Cir. 2001).

Hostile work environment harassment occurs when unwelcome sexual conduct "unreasonably interfer[es] with an individual's work performance or creat[es] an intimidating, hostile, or offensive working environment.'  The mere utterance of a statement which " 'engenders offensive feelings in an employee' would not affect the conditions of employment to [a] sufficiently significant degree to violate Title VII.*"  Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408, 1412 (10th Cir. 1997)(internal quotations omitted).   "We determine whether an environment is 'hostile' or 'abusive' by looking at the totality of circumstances, such as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; ... whether it unreasonably interferes with an employee's work performance, and the context in which the conduct occurred." *Id.*  at 1413.

9

Generally, mild or sporadic behavior is not considered sexual harassment. *See Penry v. Federal Home Loan Bank*, 155 F.3d 1257, 1261-1263 (10th Cir. 1998) (concluding gender-based incidents occurring sporadically over a three year period were insufficient to establish a hostile work environment); *Adusumilli v. City of Chicago*, 164 F.3d 353, 361-362 (7th Cir. 1998)(incidents during which a coworker allegedly touched plaintiff's arm, fingers, and buttocks were too mild and infrequent to establish a hostile work environment). Even relatively common or clearly improper behavior is often not considered sexual harassment. *See Saxton v. American Telephone and Telegraph Co.*, 10 F.3d 526, 534–35 (7th Cir.1993) (placement of hand on plaintiff's leg and kissing her until she pushed away, followed three weeks later by lurching at plaintiff from behind some bushes and unsuccessfully trying to grab her, not severe enough to create hostile environment); *Weiss v. Coca–Cola Bottling Co. of Chicago*, 990 F.2d 333, 334–37 (7th Cir.1993) (supervisor repeatedly asking employee for dates, calling her a "dumb blonde," putting his hand on her shoulder, trying to kiss her, and leaving "I love you" signs in her work area not severe enough to create issue of material fact on sexual harassment claim). Moreover, where only a few isolated incidents are alleged, the conduct must be especially egregious or extreme. *Morris v. City of Colorado Springs*, 666 F.3d 654, 667 (10th Cir. 2012); *See also Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991) (noting that "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct").

Here, the conduct about which Liverman complains consists of three, isolated instances, and none of the alleged behavior is especially egregious or extreme. To the contrary, Liverman claims that Miller's patting his stomach only offended him a "little bit." (See Undisputed Fact 11). Of the three instances, only two included physical touching (the shoulder rub and the stomach pat) and as

to each of these, they each just lasted just a few seconds. (See Undisputed Facts 9-10).  The third instance involved no touching and only consists of Miller allegedly telling him to take her a Thunder game (See Undisputed Fact 15).   None of these three instances, standing alone or even in combination with each other, are egregious or extreme.

In contrast, even where there is some mild physical contact, courts have granted summary judgment. *See Campbell v. U.S. Postal Serv.*, 151 F. Supp. 2d 1284, 1293 (D. Kan. 2001)(affirming summary judgment when supervisor touched employee's inner thigh); *Penry v. Federal Home Loan Bank*, 155 F.3d 1257, 1261-1263 (affirming summary judgment on plaintiff's sexual harassment claim where plaintiff complained of unwanted physical contact including supervisor touching plaintiff's shoulder on occasion, brushing against plaintiff as he passed behind her, and periodically touching plaintiff's arms or hands with his arms in a "slow and meaningful" manner);  *McCrackin v. LabOne, Inc.*, 903 F. Supp. 1430, 1433 (D. Kan. 1995)(Accepting as true employee's contention that co-worker squeezed and rubbed her shoulders, and touched her back at most total of four or five times over four-month period, co-worker's conduct did not constitute pervasive conduct of the level of severity required to create hostile or abusive work environment under Title VII);  *Hilt v. Dyson v. City Of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002)(several incidents of back rubbing, although inappropriate behavior in the workplace, do not constitute sexual harassment when the rubbing was brief, and involved no threats, intimidation, or humiliation);  *Perez v. Norwegian Am. Hosp.*, 243 F. Supp. 2d 792 (N.D. Ill. 2003) aff'd sub nom. *Perez v. Norwegian Am. Hosp., Inc.*, 93 F. App'x 910 (7th Cir. 2004)(hospital security force sergeant was not subjected to hostile work environment when security consultant playfully struck her on buttocks); *Schmidt v. Canadian Nat. Ry. Corp.*, 232 F. App'x 571, 574 (7th Cir. 2007)(where Plaintiff's shoulders were rubbed four times, this was too

11

insignificant, even if sexual in nature, to allow a reasonable inference that Plaintiff suffered an actionable hostile work environment)(unpublished case, attached as Exhibit 11).

At most, Liverman simply alleges that over a period of nearly eight months, Miller rubbed his shoulders once, patted his stomach outside his clothes for two seconds once, and once made a comment about going to an Oklahoma City Thunder game.    This is the extent of this supposed harassment, over eight months.  Objectively, the environment directed at Liverman was neither frequent, severe, nor threatening, not humiliating, and did not unreasonably interfere with Liverman's work performance.  (*See  Smith,* 129 F.3d at 1412).  Even Liverman only suggests that this conduct offended him "a little bit" so it is very clear that this was not even a "subjectively" hostile work environment, let alone "objectively" hostile.

Liverman presents no evidence of any frequent or severe conduct, nor any evidence that he was threatened, that  Miller's behavior was actually sexual rather than playful (or a "lack of boundaries"), or in any way affected the terms and conditions of his work performance. Liverman simply presents insufficient evidence to create a question of fact as to actionable sexual harassment in this case.   This is a far cry from an environment so "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment."   *See Penry, supra*.   Plaintiff's claim for sexual harassment under Title VII must be dismissed on summary judgment.

### C.        Defendant Is Entitled to the Faragher/Ellerth Defense.

Even assuming arguendo that Liverman was subjected to a subjectively and objectively hostile work environment by Miller, he still may not recover under Title VII. If a supervisor's harassment culminates in a "tangible employment action," the employer is strictly liable for sex

discrimination, with no defense. *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 762–63, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 807 (1998). Here, Miller was not Liverman's supervisor at the time of any of the three incidents. (See Undisputed Fact No. 18).

As there is no allegation of harassment from a supervisor, Defendant thus has the opportunity to prove the defense established in the *Faragher* and *Ellerth* cases. This defense has "two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Kramer v. Wasatch Cnty. Sheriff's Office*, 743 F.3d 726, 745 (10th Cir. 2014). Furthermore, in reviewing the adequacy of the employer's remedial and preventative responses, courts will consider the timeliness of the plaintiff's complaint, whether the employer unduly delayed, and whether the response was proportional to the seriousness and frequency of the harassment. *See Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 676 (10th Cir. 1998). An employer is not liable, although a perpetrator persists, so long as each response was reasonable. *Id*.

Here, on July 23, 2013, Liverman  signed the Anti-Discrimination Policy at the Bryan County Jail, which required employees to file a complaint by contacting their immediate supervisor in the chain of command, the Sheriff, or the County Commissioners, and also required employees to treat their coworkers with respect and banned any discriminatory practices based on sex. (See Undisputed Fact No. 3). On November 6, 2013, Miller also signed the Anti-Discrimination Policy, which required employees to treat their coworkers with respect and also banned any discriminatory practices based on sex. (See Undisputed Fact No. 7). Liverman admits that he did not complain

13

to anyone about the incident in Undisputed Fact No. 15 above (asking him to the Thunder game). (See Undisputed Fact No. 16). Prior to terminating Liverman, no one (including Liverman) had advised Newberry that Liverman had complained of sexual harassment by Miller. (See Undisputed Fact No. 19). Moreover, Liverman never complained of any harassment to Sergeant Hall. (See Undisputed Fact No. 5). Newberry also never observed Miller touch Liverman, or behave in an appropriate manner, with Liverman. (See Undisputed Fact No. 20).

The Sheriff's Office clearly had a policy in place to prevent sexual harassment and which explained the sexual harassment complaint procedure, and Liverman knew this. (See Undisputed Fact No.). However, the Sheriff's Office could not promptly correct any alleged harassment of which it didn't know, and in this case, Liverman will have no objective evidence that he in fact followed the policy. Thus, the *Faragher/Ellerth* affirmative defense applies to the instant case, and Defendant Golden cannot be held vicariously liable for Miller's alleged actions. As such, Defendant Golden has proven the defense under *Faragher/Ellerth*, and is entitled to summary judgment on Liverman's sexual harassment claim for this reason.

### D.      Plaintiff Cannot Establish a Prima Facie Case of Retaliation.

Liverman also brings a claim of retaliation under Title VII. Title VII forbids retaliation against an employee because []he has opposed any practice made unlawful by Title VII. *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004)(quoting 42 U.S.C. § 2000e-3(a)). In the absence of direct evidence of retaliation, the *McDonnell Douglas* burden-shifting framework applies. *Tabor v. Hilti, Inc*., 703 F.3d 1206, 1219 (10th Cir. 2013). To state a prima facie case of retaliation under Title VII, Liverman must show: "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that

14

a causal connection existed between the protected activity and the materially adverse action." *Id.*

Defendant Golden contends that Plaintiff cannot prove the first element: that he engaged in protected opposition to discrimination. "[T]o qualify as protected opposition the employee must convey to the  employer his or her concern that the employer has engaged in a practice made unlawful by [anti-discrimination statutes]." *Hinds v. Sprint/United Mgmt. Co.,* 523 F.3d 1187, 1203 (10th Cir.2008).

Liverman makes no allegation that he "conveyed to [his] employer his or her concern that the employer has engaged in a practice made unlawful by [anti-discrimination statutes]. *See Hinds, supra*. Moreover, a vague reference to discrimination and harassment without any indication that this misconduct was motivated by sex does not constitute protected activity and will not support a retaliation claim. *Id.* at n. 13, see also *Anderson v. Acad. Sch. Dist. 20,* 122 Fed. Appx. 912, 916 (10th Cir.2004)(unpublished opinion, attached as Exhibit 12).  Complaining about isolated incidents is also not protected opposition, as no reasonable person would believe it violated discrimination statutes. *See Robinson v. Cavalry Portfolio Services, LLC,* 365 Fed.Appx. 104, 113–14 (10th Cir.2010)(unpublished opinion, attached as Exhibit 13).

Here,   Liverman admits that he did not complain to anyone about the incident in Undisputed Fact No. 15 above (asking about the Thunder game).   (See Undisputed Fact No. 16).  Liverman never made any complaints of sexual harassment to Newberry at all.  (See Undisputed Fact No. 19). Moreover,  Liverman never complained of any harassment to Sergeant Hall.  (See Undisputed Fact No. 6). Newberry also never observed Miller touch Liverman, or behave in an appropriate manner, with Liverman.  (See Undisputed Fact No. 20).  Liverman simply fails to present evidence that he conveyed to his employer his or her concern that the employer has engaged in a practice made

unlawful by anti-discrimination statutes.

Liverman also cannot establish the third element of a retaliation claim, namely that a causal connection existed between the protected activity and the materially adverse action. As to this third element, "[t]he text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under [Title 42]§ 2000e–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas v. Nassar*, 133 S. Ct. 2517, 2534 (2013).  Further, "an employer's action against an employee cannot be *because* of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition*." Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002).

Here, as part of the hiring process, Liverman signed the Rules and Regulations for Jail employees, which included a notice that grounds for termination included "Fraternization, or allowing the fraternization (conducting social relations with people who are actually unrelated and/or of a different class especially with whom one works as though they were siblings, family members, personal friends, or lovers) between inmates, jailers, relatives, or friends with any current inmate of the Bryan County Jail." (See Undisputed Fact No. 2).  Ashley Shores ("Shoers") was booked into the Bryan County Jail on December 4, 2013, where she was an inmate until her release on December 30, 2013. (See Undisputed Fact No. 21). Between December 31, 2013 and January 12, 2014, Liverman and Shores repeatedly sent flirty Facebook messages to each other, such as: Liverman told  Shores that it was "cool" that she was drinking; Liverman asked Shores "why do u wanna text me so bad lol?;" Liverman asked Shores "So ur not into white guys;" and Liverman asked Shores to send him "a pic," among other text messages. (See Undisputed Fact No. 22). Liverman agrees that a supervisor could think that his Facebook messages were inappropriate.  (See

16

Undisputed Fact No. 23).

Shores was booked in to the Bryan County Jail again on February 21, 2014, and was again an inmate until her release on June 4, 2014.  At this time, her husband was also an inmate of the Bryan County Jail.  (See Undisputed Fact No. 24).   Liverman had interactions and conversations with Shores once she returned to the Bryan County Jail, and probably spoke to her over the intercom.  (See Undisputed Fact No. 25).    Shores's husband then began making threats towards Liverman.  (See Undisputed Fact No. 26).

Then, on March 21, 2014, Shores complained to Newberry about Liverman and his actions toward her.   Shores reported that Liverman had requested Shores to be his Facebook friend, that they often spoke on the phone after her first release from the Bryan County Jail, that after her second arrest Liverman would rev his engine 5 times to say "good night" to her, and that Shores' husband had told Liverman he would not have a problem "taking him."  (See Undisputed Fact No. 27).

At this time, Shores came into Newberry's office and they pulled up the Facebook messages (referenced in Undisputed Facts No. 22 and 23 above) on the computer.  (See Undisputed Fact No. 28).    Newberry spoke with the Sheriff's Office about the issues described in Undisputed Facts No. 22-28 above; Sheriff's Office approved termination as the appropriate discipline for Liverman. (See Undisputed Fact No. 29). The concerns raised by Shores about Liverman and her husband's threats toward Liverman implicated safety issues for both Liverman and the inmates, which was worthy of termination.  (See Undisputed Fact No. 30).  Later that same day, Newberry called Liverman into her office, and asked Liverman if he had ever messaged or talked to Shores on Facebook.  Liverman admitted to the Facebook communications. (See Undisputed Fact No. 31).  Newberry terminated Liverman for fraternizing with Shores as discussed above, which was a violation of Jail policy.

17

(See Undisputed Fact No. 32).

Liverman even agrees that he was terminated because jail administration believed that he was flirting with inmate Shores. (See Undisputed Fact No. 33). He obviously doesn't believe he was retaliated against!

Even assuming arguendo that Liverman did engage in protected opposition to discrimination, the above facts show very clearly that any such alleged opposition to discrimination was not the but-for cause of his termination. Rather, the cause of his termination was his clear violation of Bryan County Jail policies in fraternizing with an inmate. This was made even worse by the safety hazard that developed when the inmate's husband (also an inmate) threatened Liverman. Moreover, Liverman presents no evidence whatsoever that either Newberry, Golden, or anyone above Newberry at the Sheriff's Office was even aware that he had allegedly made complaints about Miller at the time of his termination. Simply put, the Sheriff's Office decision to terminate Liverman cannot be "*because* of that employee's protected opposition" because Plaintiff has no evidence that Defendant Golden was aware of any such protected opposition. See *Petersen, supra,* 301 F.3d at 1188. As Liverman cannot establish either the first or third elements of a prima facie case of retaliation, his retaliation claim must be dismissed on summary judgment.

Even if this Court determines that Plaintiff has presented such a prima facie case, Defendant would note that Plaintiff's termination was for all of the legitimate, nonpretextual reasons discussed above, and Plaintiff's retaliation claims still must be dismissed as a matter of law.

## IV.    CONCLUSION.

The alleged behavior about which Plaintiff complains is not actionable, sexual harassment. The three instances about which Liverman complains are not egregious or extreme, they are not so

offensive as to alter the conditions of his employment, and they are not both objectively and subjectively abusive. Further, Plaintiff was terminated for legitimate, non-retaliatory, non-discriminatory reason: he violated Jail employee rules by fraternizing and socializing with a female who had been an inmate in the Jail, he even admitted to the Facebook messages with the inmate which he agreed could be seen as flirty.

For all the reasons contained herein, Defendant Sheriff Golden, in his official capacity, respectfully requests that he be granted summary judgment on all claims.

Respectfully submitted,

s/ Ambre C. Gooch
Ambre C. Gooch, OBA No. 16586
Jordan L. Miller, OBA No. 30892
COLLINS, ZORN & WAGNER, P.C.
429 N.E. 50th Street, 2nd Floor
Oklahoma City, OK 73105-1815
Telephone:    (405) 524-2070
Facsimile:    (405) 524-2078
Email for service: gooch@czwglaw.com

ATTORNEYS FOR DEFENDANT SHERIFF
KEN GOLDEN

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 29, 2015, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

James P. Hunt - via electronic mail at: jamesphunt@earthlink.net
406 S. Boulder, Suite 400
Tulsa, OK 74103

Gary Eaton - via electronic mail at: garyeatonlaw@aol.com
Eaton and Sparks
1717 East 15th Street
Tulsa, OK 74104
***Attorneys for Plaintiff***

s/ Ambre C. Gooch
Ambre C. Gooch